**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARQUEZ FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 3:25-cv-59-RAH-CWB** |
| | ) | |
| LINDSEY MANAGEMENT CO., INC. | ) | |
| and THE GREENS AT AUBURN | ) | |
| GOLF & COUNTRY CLUB, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Arquez Foster filed this action to assert allegations relating to his former employment. (Doc. 1). Lindsey Management Co., Inc. and The Greens at Auburn Golf & Country Club, LLC in turn have sought an entry of summary judgment. (Doc. 42). Having carefully reviewed and considered the parties' respective submissions and the record as a whole, the Magistrate Judge will recommend that summary judgment be granted.

**I.    Jurisdiction**

Although the original Complaint purported to assert a claim for relief under Title VII of the Civil Rights Act of 1964 (*see* Doc. 1 at p. 3, ¶ II), Foster later proposed an amendment that would abandon his Title VII theory in favor of a state law theory for "wrongful termination by breach of contract" (*see* Doc. 28-1 at p. 1, ¶ 5). Following a status conference on April 11, 2025, the court granted Foster leave to so amend. (*See* Doc. 33). And the court expressly cautioned Foster "that this action will proceed only on the theory of 'wrongful termination by breach of contract' as set out in the amendment and that he must seek leave to amend further should he desire to proceed on any other theory." (*Id*. at p. 2; *see also* Doc. 34). Foster does not dispute that the sole pending claim arises under state law. (*See* Doc. 42-1 at pp. 6-7, depo. pp. 50-51).

1

Because Foster is no longer proceeding on a federal law claim, the court has confirmed that complete diversity of citizenship exists between the parties (*see* Docs. 16, 38, & 39) and that the amount in controversy exceeds $75,000 exclusive of interests and costs (*see* Doc. 33). The court thus may properly exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). The parties have not contested personal jurisdiction or venue, and the factual allegations are adequate to support both. *See* 28 U.S.C. § 1391; *see also* Fed. R. Civ. P. 4(k)(1)(A).

## II.    Factual Background

Foster completed and submitted a written application to Lindsey Management Co, Inc. dated January 2, 2023 seeking employment in the area of "Golf Course Maintenance" or in the "Golf Course Pro Shop." (*See* Doc. 42-3). It was specifically disclosed in the application that any such employment would be entered on an at-will basis:

> I hereby understand and acknowledge that, unless otherwise defined by applicable law, any employment relationship with this organization, its affiliates and properties managed by this organization is of an "at will" nature, which means that the Employee may resign at any time and the Employer may discharge Employee at any time with or without cause. It is further understood that this "at will" employment relationship may not be changed by any written document or by conduct unless such change is specifically acknowledged in writing by an authorized executive of this organization.

(Doc. 43-3 at p. 4). Foster was hired into a "Course Management" position on January 10, 2023. (*See* Doc. 42-3). As part of his onboarding, Foster signed another written acknowledgment of the at-will nature of the relationship:

> I further acknowledge that this acknowledgment does not create an express or implied contract of employment or any other contractual commitment and that my employment with Lindsey Management is on an at-will basis, which means that either Lindsey Management or I are free to terminate the employment relationship at any time for any or no reason, consistent with applicable law.

(Doc. 43-4 at p. 3).

During April 2023, Foster became engaged in an altercation with a co-employee and was accused by both the involved employee and other employee witnesses of having been physically aggressive. (*See* Doc. 42-6 at pp. 2-3). Although he disputed those specific allegations, Foster had his employment terminated on April 13, 2023. (*See* Doc. 42-2). The official reason listed in the Separation Notice was that "[Foster] got upset and threw a punch at [another employee]." (Doc. 42-2 at p. 2).

Foster later filed a formal Charge of Discrimination with the EEOC on purported grounds that the termination reflected discrimination on the basis of "Race." (*See* Doc. 1 at p. 7). Foster stated therein that he previously had seen the other employee with a handgun, that the other employee became aggressive, and that he feared the other employee was going to "attack" him. (*Id*.). The narrative in its entirety provided as follows:

> On or around April 17 or 18, 2023, I got into an altercation with Steven LNU (Caucasian, Golf Maintenance). Prior to the altercation I witnessed Levi LNU (Caucasian, Superintendent) sale [sic] Steven a handgun on company property. During the altercation Steve[n] was cussing at me and he hit my forearm with his arm. I felt as though Steven was going to attack me.

(*Id*.). Foster was issued a Determination and Notice of Rights letter dated March 20, 2024 (*see id.* at p. 10) and timely filed suit on June 10, 2024 (*see id.* at p. 1).

In a pleading styled "Complaint for Employment Discrimination," Foster indicated that he was proceeding under Title VII of the Civil Rights Act of 1964. (*See* Doc. 1 at p. 3, ¶ II). In an accompanying factual narrative, Foster provided his version of the events surrounding termination and stated that "I know I and I believe I have been discriminated against of my title VII of the civil rights act of 1964." (*Id*. at p. 6). Following a motion seeking dismissal or a more definite statement of his claim (*see* Doc. 25), Foster sought to file a proposed amendment (*see* Doc. 28). Because the proposed amendment marked a shift away from a Title VII theory

of recovery, the court held a status conference specifically to discuss Foster's intentions. (*See* Doc. 28 at p. 1: expressing a desire "to amend what was formaly [sic] under the title VII of the Civil Rights Act of 1964 to wrongful termination by [b]reach of contract in diversity jurisdiction"; *see also* Docs. 26 & 30). Foster confirmed during the status conference that he wished to proceed solely on a contract theory and not on grounds of discrimination, and the Order granting leave to amend confirmed that "this action will proceed <u>only</u> on the theory of 'wrongful termination by breach of contract'" absent further amendment. (Doc. 33). Foster acknowledged as much during his sworn deposition. (*See* Doc. 42-1 at pp. 6-7, depo. pp. 50-51).

Lindsey Management Co., Inc. and The Greens at Auburn Golf & Country Club, LLC now contend that Foster's amended theory fails as a matter of law such that summary judgment should be entered in their favor. (*See* Docs. 42, 44, & 45).[1]

## III.    Legal Standard

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party… . [A fact] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (citation omitted).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[1]  It is unclear what legal or practical relationship exists between Lindsey Management Co., Inc. and The Greens at Auburn Golf & Country Club, LLC. The record appears to reflect that Foster's employment was with Lindsey Management Co., Inc. Regardless, the absence of evidence of contractual employment with <u>either</u> entity renders the parties' lack of specificity immaterial.

323 (1986). That responsibility may include identifying portions of the record that negate an essential element of the plaintiff's claim. *Id.* Alternatively, a movant who does not have a trial burden of production may show that the nonmoving party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B); *see also id.* at advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. … [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). Under either scenario, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists as to each element of the underlying claims. *See Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c)(1)(A).

To establish a genuine dispute of material fact, the nonmoving party must produce such evidence as would be sufficient for a reasonable trier of fact to return a verdict in its favor. *See Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) ("Once the moving party makes the required showing, the burden shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings."). When evaluating whether a genuine dispute of material fact exists, the court must view all the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

5

IV.    **Discussion**

"[T]he bedrock principle of Alabama employment law is that, in the absence of a contract providing otherwise, employment in this state is at-will, terminable at the will of either party." *Stewart v. Inland Building Sys.*, No. 5:21-cv-1665-LCB, 2023 WL 3312542, at *5 (N.D. Ala. May 8, 2023) (quoting *Ex parte Amoco Fabrics & Fibers Co.*, 729 So. 2d 336 (Ala. 1998)).  Under the doctrine of at-will employment, an employee "may be discharged for any reason, good or bad, or even for no reason at all."  *Id*.  Both the pre-hiring and post-hiring documents executed by Foster disclosed that his employment fell within that framework.  (*See* Doc. 43-3 at p. 4: "I hereby understand and acknowledge that … any employment relationship with this organization, its affiliates and properties … is of an 'at will' nature, which means that … the Employer may discharge Employee at any time with or without cause."; *see also* Doc. 43-4 at p. 3: "I further acknowledge that … my employment … is on an at-will basis, which means that either Lindsey Management or I are free to terminate the employment relationship at any time for any or no reason, consistent with applicable law.").  Foster further confirmed in deposition that he at all times understood that the at-will nature of his employment rendered him subject to termination at any time for any non-discriminatory reason:

> Q.   Did you understand that your employment was on an "at will" basis?
>
> A.   Yes.
>
> Q.   Tell me in your own words what that means to you.
>
> A.   In the state of Alabama a company doesn't need a reason to terminate you.
>
> Q.   Do you also understand it means that you can also leave at any time for any reason?
>
> A.   Yeah.  As long as it's not discriminatory -- discriminatory or other reasons of discrimination.

Q.  Okay.  So "at will" meaning you can leave at any time for any reason and that the company can terminate you at any time for any reason as long as it's not discriminatory?  Is that what you're saying?

A.  Yes, ma'am.

(Doc. 42-1 at pp. 15-16, depo. pp. 64-65).

At-will status yields only if "there is an express and specific contract for lifetime employment or employment for a specific duration."  *Henry v. Alabama State Dep't of Edu.*, No. 2:21-cv-107-RAH-SMD, 2023 WL 7118750, at *6  (M.D. Ala. Oct. 4, 2023)) (quoting *Ex parte Moulton*, 116 So. 3d 1119, 1136 (Ala. 2013)).  To overcome the presumption of at-will status and gain contractual protection against termination, a plaintiff must demonstrate:

(1) that there was a clear and unequivocal offer of lifetime employment or employment of definite duration, *Bates v. Jim Walter Resources, Inc.*, 418 So. 2d 903 (Ala. 1982); (2) that the hiring agent had authority to bind the principal to a permanent employment contract, *Alabama Mills, Inc, v. Smith*, 186 So. 669 (Ala. 1939); and (3) that the employee provided substantial consideration for the contract separate from the services to be rendered, *United Sec. Life Ins. Co. v. Gregory*, 201 So. 2d 853 (Ala. 1967).

*Moulton*, 116 So. 3d at 1136-37 (citation omitted).  Here, there is no evidence in the record that any such requirements were satisfied as to Foster.

Given the material facts of record that stand undisputed, the court simply cannot find that Foster entered into contractual employment with either of the defendants for a durational period. If anything, the record shows that detailed measures were taken to disclaim contractual status. Foster's employment thus could have been terminated on any non-discriminatory ground—and Foster has made no showing of any unlawful discrimination.  *See Moulton*, 116 So. 3d at 1136 (Ala. 2013) ("[E]mployees in Alabama bear a heavy burden of proof to establish that an employment relationship is other than 'at will.'"); *Henry*, 2023 WL 7118750 at *6 ("Alabama law has a strong presumption of at-will employment. … Either the employee or the employer may terminate an at-will employment contract "with or without cause or justification"—that is, for

7

"a *good* reason, a *wrong* reason, or *no* reason.") (citing *Moulton*, 116 So. 3d at 1136 and quoting *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 728 (Ala. 1987)); *see also Wesson v. Huntsman Corp.*, 206 F.3d 1150, 1154-55 (11th Cir. 2000) ("The presumption exists in Alabama that an employment relationship of indefinite duration is 'at the will of either party.'") (quoting *Wright v. Dothan Chrysler Plymouth Dodge, Inc.*, 658 So. 2d 428, 430 (Ala.1995)).

Ultimately, it is clear that Foster disputes the official account of what happened during the subject altercation and takes issue with the level of investigation that was conducted into the incident. (*See generally* Docs. 36, 42, & 42-1). Foster also emphasizes his belief that the employee with whom he had the altercation lacked supervisory authority to have confronted him over the matter that led to the altercation. (*See id.*). But none of Foster's grievances change the fact that he lacked a contractual assurance of ongoing employment. So even if Foster's personal views might be well founded in whole or part, he still would not be entitled to relief on a breach of contract theory. *See Dykes v. Lane Trucking, Inc.*, 652 So. 2d 248, 250 (Ala. 1994) ("[B]ecause such an employee is terminable at-will, even for a malicious reason, there can be no legally compensable injury resulting from the employer's terminating the employment.") (citing *Salter v. Alfa Ins. Co.*, 561 So. 2d 1050 (Ala. 1990)).[2]

---

[2]  It should also be noted that Foster's employment documents stated that "this 'at will' employment relationship may not be changed by any written document or by conduct unless such change is specifically acknowledged in writing by an authorized executive of this organization" (Doc. 43-3 at p. 4) (emphasis added). Foster has acknowledged that the record is devoid of any such evidence:

> Q.  Are you aware of any other written document that was any different from this "at will" employment language?
>
> A.  No, not right now.

(Doc. 42-1 at p. 21, depo. p. 74).

V.      **Conclusion**

For the reasons set out above, the Magistrate Judge hereby **RECOMMENDS** that the pending motion for summary judgment (Doc. 42) be granted.

It is **ORDERED** that all objections to this Recommendation must be filed no later than **December 23, 2025**.  An objecting party must identify the specific portion(s) of factual findings/ legal conclusions to which objection is made and must describe in detail the basis for each objection.  An objecting party also must identify all claims and defenses that the Recommendation has not addressed.  Frivolous, conclusive, or general objections will not be considered.

After receiving objections, the District Judge will conduct a *de novo* review of the challenged findings and recommendations.  The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings.  *See* 28 U.S.C. § 636(b)(1)(C).  A party shall be deemed to have waived the right to challenge on appeal a District Judge's order to the extent it is based upon unobjected-to findings or recommendations.  The court on appeal may review unobjected-to factual and legal conclusions only for plain error if necessary in the interests of justice.  *See* 11th Cir. R. 3-1.

No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may appeal only from a final judgment ultimately entered by the District Judge.

 **DONE** this the 9th day of December 2025.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**

9